# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS TYMA,           )
                          )
          Petitioner,        )      Civil Action No. 17-15
                          )      Magistrate Judge Maureen P. Kelly
              v.             )
                          )
DISTRICT ATTORNEY OF ALLEGHENY    )
COUNTY and ATTORNEY GENERAL      )
COMMONWEALTH OF PENNSYLVANIA,    )
                          )
          Respondents.      )

## OPINION AND ORDER

Thomas Tyma ("Petitioner"), has filed this counseled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (the "Petition"), ECF No. 1, seeking to attack his state court convictions for multiple counts of Indecent Assault and Harassment in connection with his conducting of physical examinations of patients in his rheumatology medical practice, during which examinations, he was found to have improperly touched the patients.

For the reasons that follow, the Petition will be denied because none of the grounds for relief merits the grant of federal habeas relief. Furthermore, because jurists of reason would not find this disposition of the Petition debatable, a certificate of appealability will also be denied.

## I. FACTUAL BACKGROUND

The Pennsylvania Superior Court in its December 18, 2013 Memorandum, recounted the factual history of the case as follows:

> Dr. Tyma is a rheumatologist who has practiced in Allegheny County since 1993. Between January 11, 2011, and May 24, 2011, the Commonwealth filed nine separate criminal complaints against Dr. Tyma relating to his inappropriate touching of 21 former patients during medical exams. Seventeen of

those former patients testified against Dr. Tyma at trial. In almost every case, the complainant testified that during a routine heart exam, Dr. Tyma touched her breast in a manner unrelated to the exam. In every instance, save one, the inappropriate touching occurred when the patient was alone with Dr. Tyma. A review of the testimony is necessary for our disposition of the issues raised on appeal.

Thirteen of Dr. Tyma's former patients testified during the first day of trial. L.S. testified that she had only one appointment with Dr. Tyma. After he listened to her heart with his stethoscope, he asked her if she had a breast exam recently, to which she replied, "yes; I just had one." N.T., 3/12–19/2012, at 11. She explained that "at that time his hand was already groping me around each breast, over top of my sweater." *Id*. Although she made another appointment with Dr. Tyma before she left the office, she cancelled the appointment the next day, and never returned.

C.W. saw Dr. Tyma "five or six times." *Id*. at 24. She testified that during most of the exams, she was not alone with Dr. Tyma because a physician's assistant was in the room. However, during the one visit she was alone with Dr. Tyma, he asked her to lie down on the exam table and then "took his right hand inside [her] blouse and covered [her] left breast" over her bra. *Id*. at 27. C.W. testified that she returned for one follow-up appointment, but was not alone with Dr. Tyma during that visit. She never returned again.

R.C. testified that she only met with Dr. Tyma on one occasion. Although she complained of pain in her neck and jaw, she testified that Dr. Tyma "proceeded to touch [her] body, grope both of [her] breasts, put his hand down [her] back side and touch [her] butt." *Id*. at 38. She explained that he "literally cupped [her breasts] and rubbed and massaged around them and kept asking if there was any pain and [she] said no." *Id*. at 39. She testified that, although a female employee was present in the room during the exam, the employee was taking notes and "never picked her head up." *Id*. at 41. R.C. decided to follow-up with a different rheumatologist.

E.G. was the first former patient to lodge a criminal complaint against Dr. Tyma. She testified that she had two appointments with Dr. Tyma. During the first appointment, she saw Dr. Tyma only briefly, and he did not perform a physical exam. However, during the second appointment, while Dr. Tyma was listening to her heart, "[h]e had his stethoscope on [her] chest and then he slid his hand inside [her] bra and grabbed [her] left breast and squeezed it." *Id*. at 54. He then asked her to stand up and bend over, ostensibly so he could check her spine. E.G. testified that he asked her to bend over two or three times, "[a]nd then after [she] stood up, he took his hands and rubbed them down [her] back and on [her] behind." *Id.* at 55. Although she made a followup appointment on her way out,

she testified that she never intended to keep it. E.G. reported the incident to the police two days later. *Id.* at 56.

B.S. testified that Dr. Tyma inappropriately touched her on two occasions. During the first visit, he put his left hand under her shirt and grabbed her breast over her bra, while he held his stethoscope in his right hand. *Id.* at 69–70. B.S. further testified that during her second visit with Dr. Tyma, he, once again, grabbed her left breast with his left hand as he held his stethoscope in his right hand. *Id.* at 73. She did not return to his office again.

R.T. was referred to Dr. Tyma by her brother, who was also his patient. She testified that during her first appointment, a physician's assistant remained in the room the entire time. However, during the follow-up exam, she was alone in the room with Dr. Tyma. R.T. testified that after he listened to her heart and lungs, he asked her to lie down on the table "and he lifted up [her] sweater and he felt both of [her] breasts" over her bra. *Id.* at 85–86. Although she made a follow-up appointment before she left, she never returned to Dr. Tyma's practice.

M.J.S. testified that she was a patient of Dr. Tyma's for "a good ten years." *Id.* at 97. She had appointments with either him or a physician's assistant every three to six months, and never experienced anything inappropriate. However, M.J.S. testified that during her "last three or four visits" with Dr. Tyma, "[w]hen he would listen to [her] heart beat, he would kind of roughly grab the left breast and listen to [her] heart [.]" *Id.* at 100. The incidents occurred over her clothing. She explained why she kept returning to Dr. Tyma after the first incident:

> Because I wasn't sure and he was my doctor and I trusted him. And I knew him for all these years. And I wasn't sure. I was very embarrassed.

*Id.* at 101.

F.F. was referred to Dr. Tyma by her primary care physician. She testified that during her first appointment, Dr. Tyma asked her to lie down on the exam table, and pull up her sweater so that he could check her heart. When she did, her breast was exposed from her bra. Dr. Tyma then put his left hand on her right shoulder, and his right hand on her left breast. F.F. explained that he then brought his left hand down and "swiped down by [her] pelvic area." *Id.* at 111. She also testified that while this was occurring, Dr. Tyma "was pressing his groin up against [her] right arm." *Id.* at 115. Although F.F. returned to Dr. Tyma for two follow-up appointments, she testified that nothing inappropriate occurred during those exams.

J.S. testified that during her initial consultation with Dr. Tyma, he did not perform a physical exam. However, during a follow-up visit, when she was alone

with Dr. Tyma in the exam room, "he put his hand inside of [her] bra[, a]nd then he told [her] he didn't need to see [her] again." *Id.* at 129. J.S. explained that Dr. Tyma was not performing a physical exam at that time, but that he simply touched her breasts. *Id.* at 133.

The next complainant, L.H., testified that while she was in the hospital, treating for pancreatitis, Dr. Tyma examined her a few times because her doctor requested a rheumatologist consult. During one of his visits, he was leaning over her to examine a skin inflammation near her collarbone. Although there was another patient in the room, L.H. testified that the curtain surrounding her bed was closed. *Id.* at 143. She explained that when Dr. Tyma "went to go stand up, he grabbed [her] left breast" over her hospital gown. *Id.* at 144–145. L.H. testified that she believed his actions were intentional because "it was a grab" and "there was really no reason for him to grab [her]." *Id.* at 150.

U.G. tesitified [sic] that she was a patient of Dr. Tyma's for many years. The first time he touched her inappropriately, his whole hand touched her breast while he was listening to her heart with a stethoscope. She dismissed it as an accident. *Id.* at 154. However, the second time it happened, and he put his entire hand over her breast, she realized it was not an accident. *Id.* at 155–157. U.G. testified that after the second incident, she decided not to continue treating with him.

G.J.S. was another longtime patient of Dr. Tyma's. During one of her last visits, however, Dr. Tyma had difficulty putting his stethoscope under her bra because it was very snug. She testified that once it was in place, several fingers of his hand, that was holding the stethoscope, "were going up and down in a caressing manner on the inner portion of [her] breast." *Id.* at 169. Then, Dr. Tyma "cupped" her breast with his other hand and "was squeezing [the] breast in an abnormal manner." *Id.* G.J.S. testified that she had to return to Dr. Tyma for one more appointment so that she could obtain a refill for a prescription. She explained that "[t]here was not inappropriate touching during that visit[,]" but it was "awkward." *Id.* at 173. G.J.S. also explained that she was hesitant to report the encounter because she was in pharmaceutical sales, and knew Dr. Tyma on a professional level, as well as being his patient. *Id.* at 179. D.M. was the final complainant to testify on the first day of trial.

D.M. was originally a patient of another doctor in the practice, but was transferred to Dr. Tyma after her former doctor left. She testified that during her initial visit with Dr. Tyma, Dr. Tyma was listening to the right side of her chest with a stethoscope, when he touched her left breast under her bra with his other hand. *Id.* at 187. During the same appointment, she required an injection in her left hip. Dr. Tyma proceeded to rub the area for five to ten minutes, ostensibly to rub the medication into the muscle. *Id.* at 189– 190. While he was doing so, Dr. Tyma said to her, "you do trust me," to which she replied, "yes; you are my

doctor." *Id.* at 190. D.M. testified that his comment "didn't feel right to [her]" and that she "made up her mind in that room that day [she] was not going to follow up with him again." *Id.*

The remaining four complainants testified on the second day of trial. T.J. testified that she had only one consultation appointment with Dr. Tyma. After she had some lab work done, she met with Dr. Tyma in an exam room. T.J. testified that while Dr. Tyma was questioning her as she laid on the table, he "just grabbed [her] breast and just kind of massaged it and then stopped and turned his back to [her] and just left [her] there." *Id.* at 207. She never returned to his practice.

J.M. testified that she first met Dr. Tyma when he consulted with her while she was in the hospital for an unrelated issue. She then visited his office for a follow-up exam. J.M. testified that Dr. Tyma acted inappropriately during three visits. The first time, after he listened to her heart with a stethoscope, he placed the instrument around his neck "and proceeded to lift [her] shirt and ... bra and started to rub [her] breast." *Id.* at 221. Later during the same exam, while Dr. Tyma was checking her spine, J.M. testified that he "had [her] bend over and he took his hand and ran it down [her] spine and proceeded to lower her pants a few inches and rubbed [her] tail bone and proceeded to rub [her] buttocks." *Id.* at 222. Although she had no intention of returning to Dr. Tyma's office, she made another appointment with him about a year later because she was still in pain, and it would have taken three to four months to get an appointment with another rheumatologist. *Id.* at 223–224. Nothing inappropriate occurred during the exam. However, as J.M. was leaving, Dr. Tyma asked her if she was sexually active and if she was on birth control. He also suggested she tell her partner "to take it easy with [her] ... or he could injure [her] joints." *Id.* at 227. Six months later, J.M. had a third appointment with Dr. Tyma. After he used his stethoscope to check her heartbeat, he, once again, placed the instrument around his neck, and proceeded "to put his hand up [her] shirt and put a couple of fingers down [her] bra and caressed [her] nipple." *Id.* at 228. J.M. never went to see Dr. Tyma again.

A.M. testified that she had about a dozen appointments with Dr. Tyma beginning in the summer of 2009. During the exams when she was alone with Dr. Tyma, A.M[.] testified that he would lift her shirt to listen to her heartbeat with a stethoscope, and then "would go on both breasts touching [her bare] nipples." *Id.* at 241. She indicated that "[t]he only time it didn't happen is when the physician assistant was in the room." *Id.* A.M. also testified that on one or two occasions after the "heart, breast exam, whatever you want to call it," he examined her stomach and "put his fingers ... down ... where [her] pubic hair is." *Id.* at 243. She explained that although she "definitely questioned" what he was doing, she "trusted him as [her] doctor." *Id.* at 248. She also testified that she continued to treat with Dr. Tyma because "everyone claimed he was a good doctor ... [a]nd he was." *Id.* at 249.

Lastly, L.R. testified that she began treating with Dr. Tyma in the early 2000's after her former rheumatologist left the practice. She saw him about three times each year. She explained that during every exam, Dr. Tyma performed a breast exam, including "skin-to-skin contact ... just like a gynecologist would do ... rotating around the breast, each breast." *Id.* at 262. Although Dr. Tyma never explained why he felt it necessary to perform a breast exam, L.R. thought it was "a little wellness perk to his treatment." *Id.* at 263. However, after she learned about Dr. Tyma's arrest, and her subsequent appointments with rheumatologists did not include breast exams, she "realized [she] might be one of the women who had been touched inappropriately." *Id.* at 267– 268.

All of the complainants, except R.C., testified that the inappropriate touching occurred **only** when they were alone with Dr. Tyma. In fact, several witnesses testified that Dr. Tyma never touched their breasts when a physician's assistant was in the room. In almost every case, the complainant testified the inappropriate touching occurred for about five to ten seconds. Moreover, the complainants, all of whom suffered from multiple maladies, indicated that none of their other doctors had ever touched their breasts during a heart exam. Further, all of the complainants, with the exception of E.G[.], first reported the incident to the police after they learned of Dr. Tyma's arrest.

Cmmw. v. Tyma, 1047 WDA 2012, 2013 WL 11246163 at *1-5 (Pa. Super. Dec. 18, 2013)

(footnotes omitted).

## II. PROCEDURAL HISTORY

### A. State Court

The Pennsylvania Superior Court, in its December 1, 2016 Memorandum addressing

Petitioner's appeal in the Post Conviction Relief Act ("PCRA") proceedings, adopted the PCRA

trial court's opinion as its own.   Cmmw. v. Tyma, No. 1908 WDA 2015, 2016 WL 7017386, at

*4 (Pa. Super. Dec. 1, 2016) ("Accordingly, we find that the PCRA court's May 12, 2016

opinion comprehensively discusses and properly disposes of the issues presented. We, therefore,

adopt the PCRA court's opinion addressing the merits of appellant's claims as our own

for purposes of further appellate review.").   The Superior Court recounted the state court

procedural history as follows:

On March 12, 2012, appellant waived his right to a jury and proceeded to a bench trial. Appellant was represented at trial by Stanton D. Levenson, Esq. (hereinafter, "trial counsel"). Following a six-day trial, appellant was found guilty of 18 counts of indecent assault and 17 counts of harassment on March 19, 2012. On May 24, 2012, appellant was sentenced to an aggregate term of 60 days' imprisonment, followed by one year of county intermediate punishment and six years of concurrent probation. On June 4, 2012, appellant filed timely post-sentence motions, which were denied by the trial court on June 28, 2012. Appellant filed a timely notice of appeal on July 5, 2012. On December 18, 2013, a panel of this court affirmed appellant's judgment of sentence. ***See Tyma***, 93 A.3d 513. Appellant did not file a petition for *allocatur* with our supreme court.

Thereafter, on October 27, 2014, appellant filed a timely PCRA petition. The Commonwealth filed its answer to appellant's PCRA petition on March 31, 2015. On May 1, 2015, appellant filed a response to the Commonwealth's answer. On June 25, 2015, the PCRA court provided appellant with notice, pursuant to Pa.R.Crim.P. 907(1), of its intention to dismiss his petition without a hearing. Thereafter, on November 10, 2015, the PCRA court dismissed appellant's petition without a hearing. This timely appeal followed on December 4, 2015. On December 16, 2015, the PCRA court ordered appellant to file a Rule 1925(b) statement by February 5, 2016. On February 4, 2016, appellant complied with the PCRA court's directive and filed a Rule 1925(b) statement spanning 23–pages and raising 29 distinct claims of ineffectiveness of trial counsel. The PCRA court filed a comprehensive, 30–page Rule 1925(a) opinion, accompanied by a three-page appendix, on May 12, 2016.

On appeal, appellant raises the following issues for our review:

> I. Whether the PCRA Court Erred by Dismissing Appellant's PCRA Petition Without a Hearing on Trial Counsel's Ineffectiveness: (A) for Failing to Call Available Exculpatory Witnesses; (B) for Failing to Impeach Complainants with Available Exculpatory Evidence; (C) for Failing to Introduce Exculpatory Evidence, and (D) for Failing to Obtain Evidence[?]
>
> II. Whether the Cumulative Effect of [Trial] Counsel's Errors Deprived Appellant of His Sixth Amendment Right to Effective Assistance of Counsel?

Appellant's Brief at 1.

Id., 2016 WL 7017386, at *1 - 2 (footnote omitted).

The Superior Court affirmed the denial of PCRA relief, addressing the claims raised on the merits.

After the Superior Court affirmed the denial of PCRA relief, Petitioner did not file a Petition for Allowance of Appeal with the Supreme Court of Pennsylvania.

**B. Federal Court**

Petitioner paid the filing fee and the counseled Petition was filed. ECF No. 1. In the instant Petition, Petitioner raised three Grounds for Relief, referred to by Petitioner as "Claims for Relief":

> [GROUND ONE] The evidence was insufficient under the Due Process Clause of the U.S. Constitution to support the verdicts because the evidence failed to prove Petitioner had indecent contact with his patients without their consent. No patient made any verbal response to Dr. Tyma's examination to hom [sic] or to staff membrs [sic] who were interviewed by the police. In addition, no patient testified that Dr. Tyma exhibited signs of sexual gratification or harassment of them.

ECF No. 1 ¶ 16.

> [GROUND TWO] The state courts erred by denying Petitioner relief on his Sixth Amendment claims of ineffective assistance of trial counsel: (a) for failing to call available exculpatory witnesses; (b) for failing to impeach complainants with available exculpatory evidence; (c) for failing to introduce exculpatory evidence, and (d) for failing to obtain evidence.

Id. ¶ 17.

> [GROUND THREE] The cumulative effect of trial counsel's errors deprived the Petitioner of his Sixth amendment right to effective assistance of counsel.

Id. ¶ 19. Petitioner also contends that he is "innocent and his conviction was a miscarriage of justice [and] [a]ccordingly, at a minimum, he is entitled to an evidentiary hearing on his claims of factual innocence. Id. ¶ 22.

Respondents filed a Motion to Dismiss, asserting that the Petition was essentially bald allegations. ECF No. 6. This Court denied the Motion to Dismiss. ECF No. 7. Thereafter, counsel for Petitioner filed a Motion for Leave to File a Brief in Support of the Petition, ECF No. 8, which the Court granted. ECF No. 9. After being granted an extension of time, Petitioner filed his Brief in Support of the Petition. ECF No. 12. Although Petitioner raised three grounds for relief in his Petition, in the Brief in Support of the Petition, he only raised two grounds, namely, Grounds Two and Three as identified above, and apparently abandoned Ground One, the claim of insufficient evidence. Id. at 7 and 27.

After being granted an extension of time, Respondents filed their Answer, denying that Petitioner was entitled to any federal habeas relief. ECF No. 17. Respondents attached to their Answer, as exhibits, copies of much of the state court record. Respondents also caused the original state court record to be delivered to the Clerk of this Court.

All parties have consented to the exercise of plenary jurisdiction by a United States Magistrate Judge. ECF Nos. 4 and 5.

### III. APPLICABLE LEGAL PRINCIPLES

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (the "AEDPA") which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996. Because Petitioner's habeas Petition was filed after its effective date, the AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state court has reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA provides

the applicable deferential standards by which the federal habeas court is to review the state court's disposition of that issue.  See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court expounded upon the standard found in 28 U.S.C. § 2254(d).  In Williams, the Supreme Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States." Id. at 404-05 (emphasis deleted).  A state court decision can be contrary to clearly established federal law in one of two ways. First, the state courts could apply a wrong rule of law that is different from the rule of law required by the United States Supreme Court. Second, the state courts can apply the correct rule of law but reach an outcome that is different from a case decided by the United States Supreme Court where the facts are indistinguishable between the state court case and the United States Supreme Court case.

In addition, we look to the United States Supreme Court holdings under the AEDPA analysis as "[n]o principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for habeas relief." Rodriguez v. Miller, 537 F.3d 102, 106–07 (2d Cir. 2008) (citing Carey v. Musladin, 549 U.S. 70 (2006)).  The United States Court of Appeals for the Third Circuit has explained that "Circuit precedent cannot create or refine clearly established Supreme Court law, and lower federal courts 'may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to [the Supreme] Court, be accepted as correct.'" Dennis v. Sec., Pennsylvania Dept. of Corrections, 834 F.3d 263, 368

(3d Cir. 2016)(en banc)(quoting, <u>Marshall v. Rodgers</u>, 569 U.S. 58, 64 (2013) (per curiam)).  As the United States Supreme Court has further explained: "[s]ection 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." <u>White v. Woodall</u>, 572 U.S. 415, 428 (2014).

The AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

Finally, it is a habeas petitioner's burden to show that the state court's decision was contrary to or an unreasonable application of United States Supreme Court precedent and/or an unreasonable determination of the facts.  <u>Moreno v. Ferguson</u>, CV 17-1412, 2019 WL 4192459, at *3 (W.D. Pa. Sept. 4, 2019), <u>appeal</u> <u>filed</u>, 19-3777 (3d Cir. 12/6/2019).  This burden means that Petitioner must point to specific caselaw decided by the United States Supreme Court and show how the state court decision was contrary to or an unreasonable application of such United States Supreme Court decisions. <u>Owsley v. Bowersox</u>, 234 F.3d 1055, 1057 (8th Cir. 2000) ("To obtain habeas relief, Mr. Owsley must therefore be able to point to a Supreme Court precedent that he thinks the Missouri state courts acted contrary to or unreasonably applied. We find that he has not met this burden in this appeal. Mr. Owsley's claims must be rejected because he cannot provide us with any Supreme Court opinion justifying his position."); <u>West v. Foster</u>, 2:07-CV-00021-KJD, 2010 WL 3636164, at *10 (D. Nev. Sept. 9, 2010) ("petitioner's burden under the AEDPA is to demonstrate that the decision of the Supreme Court of Nevada rejecting her claim 'was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States*.' 28 U.S.C. § 2254(d)(1) (emphasis

added). Petitioner has not even begun to shoulder this burden with citation to apposite United States Supreme Court authority."), aff'd, 454 F. App'x 630 (9th Cir. 2011).

The United States Court of Appeals for the Third Circuit has recognized the significance of the deference under AEDPA that federal habeas courts owe to state courts' decisions on the merits of federal legal claims raised by state prisoners in federal habeas proceedings and the Third Circuit emphasized how heavy is the burden that petitioners bear in federal habeas proceedings. The Third Circuit explained that: "[w]e also defer to state courts on issues of law: We must uphold their decisions of law unless they are 'contrary to, or involve[ ] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.' So on federal habeas, 'even 'clear error' will not suffice.' Instead, the state court must be wrong 'beyond any possibility for fairminded disagreement.'" Orie v. Sec. Pennsylvania Dept. of Corrections, 940 F. 3d 845, 850 (3d Cir. 2019) (citations and some internal quotations omitted).

## IV. DISCUSSION

### A. Ground One Does Not Merit Relief.

#### 1. Ground One was abandoned by Petitioner in his Brief in Support.

In Ground One of the Petition, Petitioner claims there was insufficient evidence to support the verdicts of guilty as to apparently both the indecent assault convictions and the harassment convictions. In addition, Petitioner asserts that no patient testified that Dr. Tyma exhibited signs of sexual gratification or harassment of them. ECF No. 1 ¶ 16. As noted above, Petitioner raised Ground One in the Petition but did not raise or address it in the Brief in Support. Respondents, noting this in their Answer, assert that "Petitioner appears to have abandoned his

sufficiency challenge as he did not include the claim or any argument thereto in his Brief." ECF No. 16 n.7.

We agree. We find that Petitioner abandoned the claim of insufficient evidence and, as such, has waived Ground One.

### 2. Ground One does not afford habeas relief.

In the event that Petitioner did not intend to abandon Ground One, we find that Ground One does not afford Petitioner federal habeas relief under the AEDPA standards. The Superior Court addressed this claim on the merits and in doing so recounted the evidence offered at Petitioner's bench trial, which we reproduced above in the Factual Background section. In addressing this claim on the merits, the Superior Court rejected the claim and relied on the extensive testimony of the victims recounted above, to find that each element of the crimes of indecent assault and harassment were supported by the evidence. Cmmw. v. Tyma, 2013 WL 11246163 at *7 – 8.

In the Petition, Petitioner asserts in a conclusory fashion, quoting the language of AEDPA, that the "state courts' decision on the above claims was 'contrary to clearly established federal law,' 28 U.S.C. § 2254(d)(1) and 'was based on an unreasonable determination of the facts in light of the evidence presented'" in the state court." ECF No. 1 ¶ 20. However, Petitioner fails to point to any specific United States Supreme Court precedent that the Superior Court's disposition of Ground One was contrary to or which the Superior Court unreasonably applied. Owsley v. Bowersox, 234 F.3d at 1057; Ross v. Atty. Gen. of State of Pennsylvania, Civ. A. No. 07-97, 2008 WL 203361, at *5 (W.D. Pa. Jan. 23, 2008); West v. Foster, 2010 WL 3636164, at *10. Petitioner also fails to point out which facts found by the state courts constituted an unreasonable determination of the facts. Moreno v. Ferguson, CV 17-1412, 2019

WL 4192459, at *7 (W.D. Pa. Sept. 4, 2019) ("Accordingly, we find that Petitioner fails to carry his burden to show entitlement to relief under 28 U.S.C. § 2254(d)(2) for two independent reasons. First, he fails to point to a specific factual finding made by the state courts which was an unreasonable determination. Second, Petitioner has pointed to no specific evidence, yet alone clear and convincing evidence, which the state courts found credible, to rebut any specific state court factual finding."). Accordingly, Petitioner fails to show entitlement to federal habeas relief as to Ground One.

**B. Ground Two Fails to Afford Federal Habeas Relief.**

In Ground Two, Petitioner argues that his trial counsel was ineffective for: 1) failing to call exculpatory witnesses; 2) failing to impeach the victims with available impeaching evidence; 3) failing to introduce exculpatory evidence and 4) failing to obtain evidence. ECF No. 1 ¶ 17. See also Brief in Support, ECF No. 12 at 7.

The State Courts addressed these claims of alleged ineffective assistance of counsel on the merits. Accordingly, the AEDPA standard of review applies herein.

**1. The decision of the state courts is not contrary to <u>Strickland</u>.**

In addressing the claim of trial counsel's alleged ineffectiveness raised in Ground Two, both the PCRA trial court and the Superior Court, applied the state court test for ineffective assistance of counsel ultimately derived from <u>Commonwealth v. Pierce</u>, 527 A.2d 973 (Pa. 1987) (the "<u>Pierce</u> standard"). <u>Cmmw. v. Tyma</u>, 2016 WL 7017386, at *2 (citing <u>Cmmw. v. Charleston</u>, 94 A.3d 1012 1020 (Pa. Super. 2014), *appeal den.*, 104 A.3d 523 (Pa. 2014)).

The <u>Pierce</u> standard has been found to be materially identical to the test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>Werts</u>, 228 F.3d at 203. The United States Court of Appeals for the Third Circuit has ruled that this standard is not "contrary to" <u>Strickland</u>

in the sense of being a wrong rule of law.  Hence, Petitioner cannot show that the Superior

Court's disposition of Ground Two is contrary to United States Supreme Court precedent in the

first sense of applying a wrong rule of law.  Nor has Petitioner shown that the Superior Court's

disposition is contrary to United States Supreme Court precedent in the second sense, <u>i.e.</u>, he

fails to point to a case decided by the United States Supreme Court where the facts are

indistinguishable from his case but where the state court reached an outcome different from the

outcome reached by the United States Supreme Court.

### 2.  The state courts did not unreasonably apply <u>Strickland</u>.

Moreover, Petitioner has failed to show that the PCRA trial court's and the Superior

Court's decision, by adoption, was an unreasonable application of United States Supreme Court

precedent on ineffective assistance of counsel.

In <u>Strickland</u>, the United States Supreme Court explained that there are two components

to demonstrating a violation of the right to effective assistance of counsel.

First, the defendant must show that counsel's performance was deficient.  This requires

showing that "counsel's representation fell below an objective standard of reasonableness."

<u>Strickland</u>, 466 U.S. at 688; <u>see</u> <u>also</u> <u>Williams v. Taylor</u>, 529 U.S. at 390-91.  In reviewing

counsel's actions, the court presumes that counsel was effective. <u>Strickland</u>, 466 U.S. at 689.

There is no one correct way to represent a client and counsel must have latitude to make tactical

decisions.  <u>Lewis v. Mazurkiewicz</u>, 915 F.2d 106, 115 (3d Cir. 1990) ("[W]hether or not some

other strategy would have ultimately proved more successful, counsel's advice was reasonable

and must therefore be sustained.").   In light of the foregoing, the United States Court of Appeals

for the Third Circuit has explained, "[i]t is [] only the rare claim of ineffective assistance of

counsel that should succeed under the properly deferential standard to be applied in scrutinizing

counsel's performance." <u>United States v. Kauffman</u>, 109 F.3d 186, 190 (3d Cir. 1997) (<u>quoting</u> <u>United States v. Gray</u>, 878 F.2d 702, 711 (3d Cir. 1989)).

Second, under <u>Strickland,</u> the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694; <u>see</u> <u>also</u> <u>Williams,</u> 529 U.S. at 391.

Moreover, because the state courts addressed Petitioner's claims of ineffectiveness on the merits, this Court must apply the deferential standards of the AEDPA as to those claims, which results in a doubly deferential standard as explained by the United States Supreme Court:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' *id.*, at 689 [104 S.Ct. 2052]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, *Knowles*, 556 U.S., at ——, 129 S.Ct., at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —— [129 S.Ct., at 1420]. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

<u>Premo v. Moore</u>, 562 U.S. 115, 122 - 123 (2011) (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 105 (2011)). <u>Accord</u> <u>Grant v. Lockett</u>, 709 F.3d 224, 232 (3d Cir. 2013) ("'A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself.' *Id.* Federal habeas review of ineffective assistance of

counsel claims is thus 'doubly deferential.' *Pinholster*, 131 S.Ct. at 1403. Federal habeas courts must 'take a highly deferential look at counsel's performance' under *Strickland*, 'through the deferential lens of § 2254(d).'"), <u>rejected on other grounds by</u>, <u>Dennis</u>, 834 F.3d at 293.

### 3. Ineffectiveness for failing to call exculpatory witnesses.

In addressing Ground Two, the PCRA trial court and the Superior Court found that Petitioner failed to show deficient performance of trial counsel in failing to call the allegedly available exculpatory witnesses. Petitioner pointed to, *inter alia*, physician assistants whom he alleges that his trial counsel should have called in order to establish that Petitioner was not alone with the victims at the times of the alleged indecent contacts. However, the state courts found that for all but one of the incidents of indecent contact, Petitioner was alone with the victims. Accordingly, the state courts found that the allegedly exculpatory witnesses were not in fact exculpatory because they simply were not present at the time of the indecent contacts.

The Superior Court specifically rejected this claim as follows:

> As the PCRA court properly recognized in its opinion, "[t]he entire point of an exculpatory witness is to exculpate—that is, to prove that [appellant] did not do what he is accused of. However, a person who was not present at the time of the incident(s) can only establish that they did not witness the incident, not that it did not occur." (PCRA court opinion, 5/12/16 at 20.) Instantly, the record reflects that each of the victims in this case, with the exception of Roxanne Churilla, testified that they were alone with appellant when the inappropriate contact occurred, and appellant freely admitted that he did see each of these women by himself at various times. (***See*** notes of testimony, 3/12–19/12 at 27, 38–41, 66, 110–111, 143–144, 156–157, 206–207, 220– 221, 356–358, 370, 380–392.) Therefore, the fact that the testimony of appellant's purported exculpatory witnesses, some of whom did, in fact, testify to appellant's character at trial, would have indicated that he did not engage in any inappropriate touching in their presence is irrelevant to whether he committed the crimes against the victims on the days in question. Accordingly, we agree with the PCRA court that trial counsel was not ineffective for failing to introduce this allegedly exculpatory testimony at trial.

<u>Cmmw. v. Tyma</u>, 2016 WL 7017386, at *3.

Petitioner does not argue that the foregoing is an unreasonable application of United States Supreme Court precedent and, therefore fails to carry his burden to show an error of law under the deferential standards of the AEDPA.

### a. State Courts did not unreasonably determine facts.

It appears that Petitioner may be arguing that the state courts' disposition of his claim resulted in a decision involving an unreasonable determination of the facts in light of the evidence presented under 28 U.S.C. § 2254(d)(2). <u>See</u>, <u>e.g.</u>, ECF No. 12 at 8 (asserting that contrary to the Superior Court's finding that the victims were alone with Petitioner at the time of the indecent contact, there is evidence that the victims were not alone with Petitioner on the dates and times of the indecent contacts).

To the extent that Petitioner is attempting to mount an attack under 28 U.S.C. § 2254(d)(2), on the state courts' finding of fact that Petitioner was alone with the victims when most of the indecent assaults occurred, Petitioner fails to carry his burden thereunder. The confluence of several legal principles both under the AEDPA and common law require that Petitioner fail in this challenge.

We begin with first principles under AEDPA. In doing so, we recognize, as we must, that all of Petitioner's claims raised in the Petition were previously adjudicated on the merits by the state courts. Petitioner does not, and, indeed, on the record before this Court cannot contend otherwise. Hence, in conducting our evaluation of the state courts' disposition of Ground Two, we are limited to the record created before the state court. 28 U.S.C. § 2254(d)(2) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-- … (2) resulted in a decision that

was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."). Cullen v. Pinholster, 563 U.S. 170, 206 (2011) (Breyer, J., concurring in part and dissenting in part) ("There is no role in (d) analysis for a habeas petitioner to introduce evidence that was not first presented to the state courts."); Grant v. Lockett, 709 F.3d 224, 231 (3d Cir. 2013) ("In addition, review of a claim under § 2254(d)(2) is specifically limited to 'evidence presented in the State court proceeding.' 28 U.S.C. § 2254(d)(2). We have recently held that, as a general rule, 'district courts cannot conduct evidentiary hearings to supplement the existing state court record under 28 U.S.C. § 2254(d).'"), rejected on other grounds by, Dennis, 834 F.3d 263; Fears v. Bagley, 462 F. App'x 565, 568 (6th Cir. 2012) (Federal courts must rely "on only the record that was before the state court in overcoming AEDPA's deference requirements.") (citing Pinholster, 131 S.Ct. at 1400). See also Keaton v. Folino, 11-CV-07225-PD, 2018 WL 8584252, at *42 (E.D. Pa. Nov. 15, 2018) ("In *Pinholster,* seven justices agreed that no federal evidentiary hearing was appropriate when a district court reviewed whether the state court made a reasonable determination of the facts under section 2254(d)(2)."), *report and recommendation adopted,* 2019 WL 2525609 (E.D. Pa. June 19, 2019), *request for certificate of appealability filed*, 19-2633 (3d Cir. 8/29/2019); Blue v. Thaler, 665 F.3d 647, 655–56 (5th Cir. 2011) ("To this, the Supreme Court has recently added 'that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.' The same rule necessarily applies to a federal court's review of purely factual determinations under § 2254(d)(2), as all nine Justices acknowledged.") (footnotes omitted).

**b. Petitioner is not entitled to an evidentiary hearing.**

Because the state courts adjudicated this claim of ineffective assistance of trial counsel on the merits, this Court is limited to the record before the state court and Petitioner is not only not entitled to an evidentiary hearing, as he requested in his Petition, ECF No. 1 ¶ 22, and in his Brief in Support, ECF No. 12 at 18 ("Under these circumstances, Petitioner is entitled to an evidentiary hearing on his *habeas corpus* petition."), but this Court is affirmatively prohibited by AEDPA from holding an evidentiary hearing. Fears v. Bagley, 462 F. App'x at 568 ("We may rely on only the record that was before the state court in overcoming AEDPA's deference requirements."); Keaton v. Folino, 2018 WL 8584252, at *43 ("Mr. Keaton has limited his claim to a contention that the state court's fact finding was unreasonable, under section 2254(d)(2) …. In light of *Pinholster*, my review is limited to the state court record. The Petitioner's request for an evidentiary hearing must be denied.").

In addition, precisely because Petitioner challenges a state court factual determination, i.e., that the victims were alone with Petitioner at the times of most of the indecent contacts, Petitioner must contend with 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). See also Lambert v. Blackwell, 387 F.3d 210, 234 - 36 (3d Cir. 2004) (explaining the relationship between Section 2254(d)(2) and (e)(1)).

It is strikingly clear that where the state courts have adjudicated a claim on the merits, the interplay between Sections (d)(2) (limiting review to the state court record) and (e)(1) requires that the federal habeas petitioner carry his burden to rebut by clear and convincing evidence the

presumed correctness of state court factual findings by pointing to evidence solely contained in the state court record. Pinholster, 563 U.S. at 206 (Breyer, J., concurring in part and dissenting in part) ("There is no role in (d) analysis for a habeas petitioner to introduce evidence that was not first presented to the state courts."). See, e.g., Grant, 709 F.3d at 232 – 33 (finding that the State courts' factual finding was an unreasonable determination of the facts by pointing to evidence solely contained in the state court record). Moreover, this is so despite any diligence on Petitioner's part in trying to develop a factual record in state court as he argued before this Court. ECF No. 12 at 16 ("Federal courts have consistently held that it is error when a state court fails to allow a defendant, who has diligently sought a hearing, the opportunity to develop a factual base for issues he is attempting to raise on appeal."). It is crystal clear that there is no diligence exception to either Pinholster or its equivalent in Section 2254(d)(2), limiting federal habeas review to the state court record and prohibiting the federal habeas court from conducting an evidentiary hearing on any claims that were adjudicated on the merits by the state courts. Djerf v. Ryan, 931 F.3d 870, 884 (9th Cir. 2019) ("*Pinholster* clarified that this statutory exception [found in Section 2254(e)(2) which permits a federal court hearing in limited circumstances] applies only to claims reviewed de novo; evidentiary expansion is prohibited for a claim subject to AEDPA review, regardless of diligence."); Foster v. Cassady, 4:15-CV-225-CAS-SPM, 2016 WL 3511726, at *2 (E.D. Mo. Apr. 1, 2016) ("Petitioner also argues that *Williams v. Taylor*, 529 U.S. 420 (2000), contains an 'exception' to *Pinholster* and permits discovery where a petitioner has been diligent during the relevant stages in the state proceedings but the facts are still not developed. That argument is also without merit."), *objections overruled*, 4:15-CV-225 CAS/SPM, 2016 WL 3564240 (E.D. Mo. June 22, 2016); Ogle v. Mohr, 2:15-CV-776, 2016 WL 1457882, at *3 (S.D. Ohio Apr. 14, 2016) ("The Supreme Court has never recognized a

diligence exception to *Pinholster*…"); Lynch v. Hudson, 182 F. Supp. 3d 787, 791 (S.D. Ohio 2016) ("But *Pinholster* does not contain a due diligence exception. That is, Petitioner has not cited and the Court is not aware of any language in either *Pinholster* itself or any decision interpreting *Pinholster* suggesting that a petitioner who diligently attempts to convince the state courts to consider new evidence, but ultimately does not succeed, can escape the reach of *Pinholster* to have a federal habeas court consider his new evidence."). Federal courts must rely "on only the record that was before the state court in overcoming AEDPA's deference requirements." Fears v. Bagley, 462 F. App'x at 568 (citing Pinholster, 131 S.Ct. at 1400). Accord McCamey v. Epps, 658 F.3d 491, 498 (5th Cir. 2011) ("Because the present case, like *Pinholster*, concerns only claims under § 2254(d)(1), we must reject the district court's application of *Williams* and decline to consider the evidence developed in the federal court hearing. This court's review of McCamey's waiver therefore considers only the state-court record."). Hence, Petitioner's requests for an evidentiary hearing, notwithstanding that Petitioner asserts he acted with diligence in state court to attempt to adduce evidence in support of his claims in the PCRA proceedings, are properly denied.

In light of AEDPA and the fact that the state courts adjudicated Petitioner's claim of ineffective assistance of counsel on the merits, Petitioner is limited to rebutting the state courts' factual findings (that the victims were mostly alone with Petitioner at the time of the indecent contacts) by pointing to clear and convincing evidence in the state court record that rebuts the presumptively correct factual findings. Petitioner has simply failed to carry his burden.

### c. Implicit credibility determinations must be deferred to.

We note that Petitioner points to the affidavits of three of the physician assistants, which affidavits Petitioner's PCRA counsel had attached to the PCRA Petition. These three affidavits

are all substantially the same and in relevant part state that "In a general sense and as it relates to these specific examinations, this documentation [by the physician assistant of the examinations conducted by Petitioner] requires constant communication among the doctor, patient and myself, including recording my visual observations. At no time during these examinations would I have been outside of the room, especially during the cardio examination."[1] Affidavits of Kelly Heffner; Allison Karan; and Natalie Crescenze.

For present purposes, we assume that the attachment of the affidavits to the PCRA Petition renders them part of the state court record within the contemplation of Cullen v. Pinholster and 28 U.S.C. § 2254(d)(2) and (e)(1).

The state courts made a factual determination that Petitioner was mostly alone with the victims at the time that the indecent contacts occurred.[2] To the extent that Petitioner attempts to rebut the state court factual determination that Petitioner was alone with the victims at the time of the indecent contacts, Petitioner fails to carry his burden. The reason is clear. The state courts

---

[1] The three affidavits along with the entire appendix attached to the PCRA petition were placed under seal by the Court of Common Pleas of Allegheny County. Accordingly, for ease of any appellate review but respecting the order of the Court of Common Pleas, this Court will include the affidavits as an appendix to this Memorandum but will likewise place them under seal.

[2] The State Courts found as follows:

> As the PCRA court properly recognized in its opinion, "[t]he entire point of an exculpatory witness is to exculpate—that is, to prove that [appellant] did not do what he is accused of. However, **a person who was not present at the time of the incident(s)** can only establish that they did not witness the incident, not that it did not occur." (PCRA court opinion, 5/12/16 at 20.) Instantly, the record reflects that each of the victims in this case, with the exception of Roxanne Churilla, testified that they were alone with appellant when the inappropriate contact occurred, and appellant freely admitted that he did see each of these women by himself at various times.

Cmmw. v. Tyma, 2016 WL 7017386, at *3 (emphasis added).

must have considered these affidavits of the three physician assistants and rejected them as not credible.

The long established rule in federal habeas proceedings is that "Where a state court's factual findings are not made explicit, a federal court's 'duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it.' In determining what implicit factual findings, a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly." Mickens v. Johnson, CIV.A. 02-1064, 2003 WL 25773461, at *2 (W.D. Pa. Oct. 6, 2003) (quoting Campbell v. Vaughn, 209 F.3d 280, 289 (3d Cir. 2000)) (citations omitted). This rule of deference includes implicit credibility determinations made by state tribunals. Campbell v. Vaughn, 209 F.3d at 290 ("In sum, under the Supreme Court precedent articulated in *Marshall* and *LaVallee*, and pursuant to our cases such as *McAleese* and *Ahmad*, although the PCHA court did not make its findings of fact explicit, we are bound by its implicit resolution of the credibility dispute between Campbell and his trial counsel."); Fattah v. Pennsylvania Bd. of Probation and Parole, 3:CV-11-0985, 2011 WL 7629556, at *8 (M.D. Pa. Aug. 22, 2011) ("In *Anderson*, the Court stated that pursuant to 28 U.S.C. § 2254(e), 'this court must presumptively defer to the Board's implicit factual determinations that [Board Agent] was a credible witness and that [she] had not falsified documents submitted to the Board, absent clear evidence to the contrary.'"), *report and recommendation adopted*, 2012 WL 1038745 (M.D. Pa. Mar. 27, 2012). Applying this rule to the case at hand yields an obvious result.

Since the state courts found that Petitioner's trial counsel was not ineffective for failing to call the three physician assistants as witnesses to testify that Petitioner was never alone with the victims in contradiction to the testimony of the victims, in an effort to discredit the victims and

exculpate Petitioner, we conclude that  that the state courts rejected the testimony of the three physician assistants as not credible and accepted the testimony of the victims as credible since the two versions are simply irreconcilable.  Therefore, the implicit credibility determination of the state courts that the physician assistants' evidence (in the form of the three affidavits) was not credible must be deferred to by this federal habeas Court just as an explicit credibility determination must.  Given the deference we owe to the state courts' implicit credibility determinations, Petitioner cannot carry his burden because the very evidence he points to as the clear and convincing evidence (to show the state courts' unreasonably found that the victims were alone with the Petitioner at the time of the indecent assaults), i.e., the three physician assistants' affidavits, cannot qualify as clear and convincing evidence, because such evidence certainly was not convincing to the state courts as the foregoing analysis makes clear.[3]

**d. Even a state court's "paper hearing" requires AEDPA deference.**

One last argument made by Petitioner must be addressed.  Petitioner also argues that because the PCRA trial court did not conduct a hearing, we are not entitled to give deference to the PCRA trial court's factual findings, which presumably would include the PCRA trial court's factual finding that Petitioner was alone with the victims on the occasions of most of the indecent contacts with the victims, at least briefly.  ECF No. 1 ¶ 18.  Petitioner's argument would seemingly extend also to the PCRA trial court's implicit factual finding which rejected as not credible the affidavits of the three physician assistants, each of which asserted that the Petitioner was not alone with the victims at the times of the indecent contacts.  ECF No. 12 at 14 ("What

---

[3]  To be clear, we find that the state courts rested their decision on the first Strickland prong of deficient performance and not the second prong of prejudice in resolving this particular claim of ineffectiveness.  Counsel was not ineffective for failing to present such incredible testimony.

Petitioner has alleged and proven is that a Physician Assistant was present *during the examinations in question* of the complainants and that these proposed witnesses saw nothing inappropriate done by Petitioner.").

Petitioner is simply wrong as a matter of law post AEDPA. See, e.g., Craft v. Iowa, 13CV117 EJM, 2015 WL 1304435, at *2 (N.D. Iowa Mar. 23, 2015), wherein the Court explained that:

> Nothing in § 2254(d)(2) "suggests [federal habeas courts] defer to a state court's factual findings only if the state court held a hearing on the issue." *Cowans v. Bagley*, 639 F.3d 241, 246–48 (6th Cir. 2011) (according deference to state court's fact finding on competence to stand trial despite lack of a hearing); *see also Mendiola v. Schomig*, 224 F.3d 589, 592–93 (7th Cir. 2000) (comparing pre-AEDPA version of section 2254 which required a hearing to trigger deference to state courts with post-AEDPA section 2254, which lacks any such requirement, and holding that "if the state court's finding is supported by the record, even though not by a 'hearing on the merits of [the] factual issues,' then it is presumed to be correct."). This court will defer to the Iowa courts' finding of facts, irrespective of whether a hearing occurred.

Accord Lambert v. Blackwell, 387 F.3d at 239 ("the extent to which a state court provides a 'full and fair hearing' is no longer a threshold requirement [post-AEDPA] before deference applies"); Valdez v. Cockrell, 274 F.3d 941 (5th Cir. 2001) (full and fair hearing is not a precondition to according § 2254(e)(1)'s presumption of correctness to state habeas court findings of fact nor to applying § 2254(d)'s standards of review; Mendiola v. Schomig, 224 F.3d 589 (7th Cir. 2000) (defendant must defeat presumption by clear and convincing evidence, also noting that § 2254(e) "omits any mention of a hearing…. But if the state court's finding is supported by the record, even though not by a 'hearing on the merits of [the] factual issue,' then it is presumed to be correct.").

Moreover, this AEDPA deference requires this federal habeas Court to defer to the PCRA trial court's implicit credibility determinations which rejected as not credible the assertions (that

were contained in the affidavits of the three physician assistants) that Petitioner was not alone with the victims at the times of the examinations and the indecent contacts even if the state courts did not conduct a live in-person hearing. See, e.g., Johnson v. Quarterman, 204 F. App'x 367, 371 (5th Cir. 2006). The Court explained in Johnson as follows:

> Johnson contends that he did not have a "fair opportunity to challenge the credibility of the prosecutors" and that "all credibility decisions were made from a cold record." Prior to AEDPA, this Court has explained that "the presumption of correctness does not become inapplicable for the *sole* reason that no live evidentiary hearing has been held." *May v. Collins*, 955 F.2d 299, 311 (5th Cir. 1992) (emphasis in original). Thus, this challenge to the factual findings would have failed even pre-AEDPA. AEDPA "jettisoned all references to a 'full and fair hearing' from the presumption of correctness accorded state court findings of fact." *Valdez v. Cockrell*, 274 F.3d 941, 949 (5th Cir. 2001). "The presumption of correctness erected in its place at § 2254(e)(1), now simply provides that unless the petitioner can rebut the findings of fact through clear and convincing evidence, those findings of fact are presumed to be correct." *Id.* Johnson has failed to marshal clear and convincing evidence to rebut the presumption of correctness afforded the state court's findings of fact.

Id. Accord Morrow v. Dretke, 367 F.3d 309, 315 (5th Cir. 2004) ("We must deny a COA for Morrow's first claim that the federal district court erred in applying a presumption of correctness to the state habeas findings because they rested on the papers filed and not on testimony at an evidentiary hearing. The presumption of correctness under AEDPA is accorded adjudications by state courts. If the state has rejected a petitioner's habeas claim on its merits, it has adjudicated the claim. The AEDPA requires that we presume correct the state court's findings of fact unless the petitioner 'rebut[s] the presumption of correctness by clear and convincing evidence.' This is so even if the hearing was a 'paper' hearing and may not have been full and fair.") (footnotes omitted).[4]

---

[4] Furthermore, we are required to give deference to the PCRA trial court's "paper hearing" regarding the affidavits of the three physician assistants and rejection of their testimony as not

(… footnote continued)

Given that the state courts found, in the course of adjudicating this claim of ineffectiveness on the merits, that Petitioner was alone with the victims at the times of the assaults, AEDPA requires that we presume, even if it does not affirmatively appear on the record, that the state courts rejected any testimony or evidence to the contrary as not credible. Hence, under AEDPA, we defer to the implicit credibility determination that the affidavits of the three physician assistants were not credible. Accordingly, Petitioner cannot rely upon the affidavits as clear and convincing evidence given that the state courts implicitly found such evidence to be not credible, and hence, not convincing, and nothing Petitioner points us to would cause us to reject, assuming that we could, the state courts' implicit credibility determination.

Accordingly, Petitioner fails to establish that the state courts' disposition of his claim that trial counsel was ineffective for failing to introduce the testimony of the three physician assistants was contrary to or an unreasonable application of United States Supreme Court precedent or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[5] Therefore, he has not established a basis for federal habeas relief.

---

credible even if, as Petitioner argues, ECF No. 12 at 15 – 16, it was error under state law for the PCRA trial court to make any credibility determinations on the basis of affidavits before it. See, e.g., Rolan v. Vaughn, 445 F.3d 671, 680 (3d Cir. 2006) ("the District Court declined to defer to the PCRA appellate court's factual determinations based on the PCRA trial court's record because, under Pennsylvania law, the PCRA appellate court should have remanded the case. While this may be an accurate assessment of Pennsylvania law, the District Court should have deferred, despite the apparent procedural mistake.... Therefore, conforming with our sister circuits that have addressed the issue we hold that a district court judge must defer to state appellate court fact-finding.") (citations omitted).

[5] To the extent that Petitioner complains of trial counsel's ineffectiveness in not presenting other evidence such as the testimony of Petitioner's office manager or other patients, Petitioner fails to show the state courts' rejection of those claims was contrary to or an unreasonable application of United States Supreme Court precedent.

(… footnote continued)

**4. Ineffectiveness for failing to impeach the victims.**

In his Brief in Support, Petitioner lists a series of statements and "facts," including prior criminal convictions of the victims, that he contends his trial counsel should have used to impeach the victims. Petitioner asserts that the failure of his trial counsel to do so amounted to ineffective assistance of counsel.

This claim of ineffectiveness is the simplest to address. In the instant case, Petitioner was tried before a judge, sitting as the factfinder. We need not predict what effect such impeachment evidence would have had on the factfinder in order to make the prediction of whether Petitioner suffered prejudice from the lack of such impeachment evidence, i.e., whether, if trial counsel had presented such impeachment evidence, there would be a reasonable probability of a different outcome of his trial. We need not do so because the factfinder already told us that had such impeachment evidence been presented, it would not have had any effect upon the verdict. The PCRA trial court judge, who was also the judge presiding over Petitioner's bench trial, as the factfinder, clearly and unequivocally stated: "[t]his Court, which was sitting as the fact-finder in this matter, can say with certainty that even had the impeachment evidence been introduced, the result would not have been different…. The existence of the impeachment evidence, though not pursued by counsel, would not have changed this Court's findings, and so, necessarily, counsel was not ineffective in failing to present it." Cmmw. v. Tyma, 2016 WL 7017386, at *13 (quoting PCRA trial court opinion).

---

The foregoing reasoning under subheadings IV.B.3 a – d, with respect to Petitioner's challenge to state court factual findings regarding the affidavits of the physician assistants, applies equally to any and all of Petitioner's challenges to factual findings made by the state courts.

Accordingly, this claim of trial counsel's ineffectiveness for not introducing impeachment evidence fails to merit the grant of federal habeas relief because it is impossible for Petitioner to establish prejudice in view of the foregoing statement of the factfinder.

### 5. Ineffectiveness for failing to introduce exculpatory evidence.

Upon review, we deem this claim of ineffectiveness to be equivalent to the claim raised before the state courts that Petitioner's trial counsel was ineffective for: 1) failing to introduce evidence of illustrations from a medical textbook which establishes that a proper cardiac examination requires contact with a woman's breast; and 2) for failing to introduce evidence that Petitioner sent a letter to one of the victims requesting that she be a character witness for him, because such evidence establishes Petitioner's state of innocent mind given that no perpetrator would request someone whom he knew he victimized to act as a character witness.

The PCRA trial court and the Superior Court by adoption, rejected this claim on the merits. Cmmw. v. Tyma, 2016 WL 7017386, at *14-15. Petitioner fails to carry his burden under the AEDPA to show that the state courts' adjudication of this claim was contrary to or an unreasonable application of United States Supreme Court precedent or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. As such, this argument fails to provide a basis for federal habeas relief.

### 6. Ineffectiveness for failing to obtain evidence.

Petitioner also asserts that his trial counsel was ineffective for failing to obtain certain evidence. We deem this to be the same claim he raised in the state courts where he argued that his trial counsel was ineffective for failing to obtain the medical records of two of the victims. Again, the state courts addressed this claim on the merits and rejected the claim. Cmmw. v. Tyma, 2016 WL 7017386, at *15. Petitioner fails to carry his burden under the AEDPA to show

that the state courts' adjudication of this claim was contrary to or an unreasonable application of United States Supreme Court precedent or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. As such, there is no basis for federal habeas relief.

**C. Ground Three - Cumulative Ineffectiveness.**

Petitioner argues that the cumulative effect of counsel's alleged errors and deficient performance deprived him of his Sixth Amendment rights. We understand Petitioner to be asserting that even if the individual instances of his trial counsel's alleged errors considered separately did not work to his prejudice, then the cumulative effect of the alleged errors by trial counsel, when considered as a whole, worked to his prejudice and satisfied the second prong of Strickland.

The PCRA trial court and the Superior Court by adoption addressed this claim on the merits. The state courts rejected this claim of cumulative prejudice by reasoning as follows:

> Finally, the Defendant argues that all of his ineffectiveness claims "individually and cumulatively entitle [him] to relief" (Petitioner's Concise Statement of Matters Complained of on Appeal, p. 22). Once again, this claim is meritless.
>
> At the beginning of this Opinion, this Court referenced a law review article by Judge Aldisert of the Third Circuit, wherein he hypothesized that even when reversible error is found, there are usually not more than one or two errors made and, to paraphrase, that raising more issues does not necessarily mean more errors will be found. Here, the Defendant raised 29 separate claims of ineffectiveness, and though some warranted extensive discussion from this Court, some of them were so spurious that they clearly should not have been raised. Simply listing claim after claim after claim when there is no reasonable basis to support a finding that the verdict would have been different does not amount to ineffectiveness and, similarly, counsel will not be found *even more ineffective* when multiple claims are raised. It is understandable that the Defendant and his family were upset by the verdicts, however, the mere fact that the verdicts were guilty does not mean that counsel was ineffective. To the contrary, this Court felt that Mr. Levenson was obviously well-prepared for trial, that he engaged in

effective witness examinations, both on direct and cross-examination, that he made appropriate and effective arguments and, ultimately, that he presented the best defense he could with the facts he was given. As discussed above, there was no basis for a finding of ineffectiveness on any of the specific allegations, nor is there a basis for a finding of cumulative ineffective assistance. This claim must also fail.

Cmmw. v. Tyma, 2016 WL 7017386 at *16.

Petitioner fails to carry his burden to show that the foregoing is contrary to or an unreasonable application of United States Supreme Court precedent or that the decision of the state courts in rejecting this claim resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Accordingly Ground Three fails to provide Petitioner relief in these federal habeas corpus proceedings.[6]

## V.  CERTIFICATE OF APPEALABILITY

A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2).  The Court concludes that jurists of reason would not find it debatable whether the Petitioner made a substantial showing of the denial of a constitutional right.  Accordingly, a certificate of appealability will be denied.

---

[6] In this portion of his argument, Petitioner makes much of the fact regarding his trial counsel's proposed testimony for the PCRA petition proceedings, which included a concession by trial counsel that he provided Petitioner with deficient performance.  ECF No. 12 at 18 ("Indeed, trial counsel's proposed testimony, where he admits to his ineffectiveness, and his affirmation that Petitioner is innocent of the charges, establishes that Petitioner's conviction is a 'miscarriage of justice.'").  However, because the inquiry into counsel's performance is an objective one, that trial counsel subjectively admits to a deficient performance is of no legal significance under Strickland.  Chandler v. United States, 218 F.3d 1305, 1315 & n. 16 (11th Cir. 2000) (ineffective assistance inquiry is objective, and so "that trial counsel (at a post-conviction evidentiary hearing) admits that his performance was deficient matters little").

## VI. CONCLUSION

**AND NOW,** this **27th** day of December 2019, it is hereby **ORDERED** that for the reasons set forth herein, the Petition is **DENIED**. Because we conclude that jurists of reason would not find the foregoing debatable, a certificate of appealability is likewise **DENIED**.

BY THE COURT,

MAUREEN P. KELLY
UNITED STATE MAGISTRATE JUDGE

cc:    All counsel of record via CM-ECF